W. H. MORRIS ET AL. V. THE STATE.

1. ILLEGAL TAX.—When an officer has collected taxes for the State, under color of legal authority, or under pretense that he is authorized to do so, he will not be heard to controvert the validity of the law or authority under which he has acted, or dispute the right of the State to the money thus coming into his hands.

2. FRONTIER BOND TAX.—However invalid the frontier bond tax for 1870 may have been, as against a tax-payer, such invalidity will not be considered in a suit upon the collector's bond for the tax, when already collected.

3. FEES AND COMMISSIONS FOR JUSTICES, ETC.—The repeal, Nov. 29, 1871, of so much of the thirtieth section of the tax law of April 22, 1871, imposing as additional tax the fees and commissions for justices for making assessments, &c., and the fact that the assessment-roll was not filed with the comptroller until October 9, 1871, did not relieve the sheriff or collector from liability for such tax. If any of such tax was uncollected when the law imposing it was repealed, it devolved upon the sheriff to show it in defense.

4. COMMISSIONS FOR COLLECTION OF TAXES.—It seems that the collector, by his failure to settle his accounts with the treasurer, as prescribed by law, forfeited all claim to commissions upon money he should pay on his account, after it was made up by the comptroller for suit.

5. DAMAGES.—In such suit, it was error in the court to assess ten per cent. damages upon the amount found by the verdict of the jury against the delinquent tax collector.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

July 23, 1873, the State brought suit, in the Travis District Court, against W. H. Morris, as sheriff and collector of McLennan county, and his sureties on his official bond, for certain balances alleged to be due from said Morris, as collector of taxes.

The breaches of the bond, as alleged in the petition, were as follows:

"1st. That after the execution thereof, as aforesaid, the said defendant Morris, as such sheriff, as aforesaid, became chargeable with, and received and collected of money due the plaintiff for the year 1870, the sum of $7,769.66, and has failed, refused, and neglected to pay over and account for a large sum thereof, to wit, the sum of $1,487.66, which last sum, with interest and ten per cent. damages, is due plaintiff from defendants.

"2d. That after the execution of said bond, as aforesaid, the said defendant Morris, as such sheriff, became chargeable

with, received, and collected of money due the plaintiff for the
year 1871, the sum of $36,013.95, and has wholly failed,
neglected, and refused to pay over and account for a large
amount thereof, to wit, the sum of $14,384.85, which last-
named sum, with interest and ten per cent. damages, is due
from plaintiff to defendant."

The defendants demurred, and, by amendment, plaintiff
filed, as part of petition, a certified copy of the bond of the
defendants, and corrected the statement of the amounts due
for each year in which the alleged default occurred, and
claimed $2,000, on account of taxes collected by Morris, for
the year 1872.

The defendants pleaded payment, and insisted that so
much of the account charged on account of frontier bond tax
for 1870, being an illegal tax, could not be collected, and that
as to so much as was charged on account of fees and commis-
sions for justices for 1871, the tax having been repealed,
the collector was relieved from its collection, and urged
various objections to other items appearing on the comptrol-
ler's account.

The defendants proved payment of $4,309, after suit had
been instituted.   A delinquent list was allowed.

The jury found a verdict for the State, and the court ren-
dered judgment for ten per cent. additional, as damages.
The defendants appealed.

The discussion of the case and the opinion show all neces-
sary facts.

*Walton, Green & Hill,* for appellants.—The principal errors
complained of, are the rulings of the court and the re-
fusal of charges asked by the defendant upon the trial; and,
first, it was error in the court to refuse the charges asked
by the defendants in relation to what was called the frontier
tax.

To understand this subject, we must refer the court to the
act of August 5, 1870, (Paschal's Dig., art. 7247, and follow-

ing,) to provide for frontier defense. By the act, it appears authority was given for the. issuance of $750,000 of bonds, bearing interest at seven per cent, payable semi-annually, and the 4th section provided that there should "be levied each year, with other taxes of the State," an amount sufficient to pay the interest and two per cent. sinking fund; and, second, "that the taxes for this purpose shall be assessed on all property and occupations under the general laws of the State." (Paschal's Dig., art. 7250.)

We believe the law was inoperative, because there was no rule fixed by which could be determined the proper amount to be levied, and we think, in matters of taxation, which involve the highest powers of the Government, the question of the rate of taxation cannot be left unprovided for; for this would be to place the property of the citizen into the hands of irresponsible persons, or at least into the hands of persons to whom the people had not delegated that power. The expression, therefore, that a sufficient amount shall be raised to pay the interest and sinking fund, is too uncertain, and, as shown in this case, was liable to the grossest abuse; for we find that the comptroller, in fixing the amount in his opinion necessary, directed the collection of five cents on the one hundred dollars, which, from a sense of its enormity, he was induced afterwards to change to five per cent. of the State tax. That the subsequent Legislature viewed the law as inoperative for the causes here named, we have only to cite the affirmative acts, not only recognizing the obligation of the bonds, but also providing for the levy of the tax necessary to pay the interest. (See the two acts of June 3, 1873, Session Acts, 199, 206.)

Independent, however, of this view, there is a fatal objection to the levy of this tax. It will be seen by the law that the amount of the tax is to be levied "each year with the other taxes of the State," and as said in the second clause of the section, it shall be assessed on all property and occupations "under the general laws of the State;" and as the State taxes

for the year 1870 had been already levied under the general law, (to wit, on the first day of January, 1870,) and the tax rolls for that year had already been made out, and were already in the hands of the collectors at the date of the passage of the act, it is impossible that the tax aforesaid should apply for that year, unless there had been some other law authorizing it; which there was not. We take it, therefore, as wholly gratuitous on the part of the comptroller to claim a collection for that year.

Again: The taxing power of the State had already been exercised by the proper officers, and their power was for that year exhausted, unless it obtained a new lease by some special law; which law we fail to find.

In a Government like ours, of forms and traditions, much depends upon the mode of enforcing laws, and especially with respect to taxation; therefore it is universal, not only with the States but the Federal Government, that the power to levy or determine the particular tax on property is left with some board or commission created for this purpose. In this State it is devolved on the County Court.

The tax thus laid is by the proper official assessed, and a copy of the assessment is returned to the office of the comptroller of public accounts, who takes charge thereof, proceeds to examine it, and if erroneous, to cause it to be corrected. When it is found correct, it is filed in the comptroller's office, and is made the basis of account against the collector, who, from the time of the receipt and acceptance of the rolls, is chargeable with the collection of the several amounts of taxes embraced therein.

This relates to real and personal property. The tax on occupations is specific, and the collector is chargeable with the collection thereof, and is required to make a report at stated times. When these reports are filed, they also constitute the basis of an account against the collector.

These are the only sources of account against a collector, provided for by law, except in certain cases penalties may

be assessed for defalcation; and the comptroller cannot go beyond the sources the law furnishes him for the material out of which he shall make the account.

But this is not all. It will be seen that this charge of $1,324.46 is not placed on the account of 1870, because, as stated in the evidence, the comptroller did not bethink himself to levy the tax till the year 1870 had gone, or almost expired, (viz., twenty-seventh of December,) and the taxes for that year had been collected; but he then directed that the sum of five cents in the hundred dollars should be levied on all property and occupations of 1870, as shown by the roll of that year, and at once proceeded to put the sum thus ordered to be collected upon the account of the collector for 1871, stating it in this language: "Frontier tax collectable on rolls of 1870, $1,324.48;"—thus showing on its face that the tax had never been collected, as the evidence also conclusively shows.

Certainly the action of the comptroller in respect to this frontier tax was without any authority of law, and the charges asked by the defendants and refused by the court were correct, and ought to have been given.

Another ground of error consists in refusing to charge the jury that the collector was not chargeable in his account with the sum of $1,687.57, which was placed to his debit as justices' fees and commissions, because the law under which they were assessed was expressly repealed before the collector was required to account.

To understand this, we refer the court to the act of April 22, 1871, by the thirtieth section of which (omitted in Paschal's Digest) it was provided that the justices of the counties should be the assessors, and that they should be entitled to certain fees, "which fee, together with the fee for making the assessment, shall be added to and collected with the direct State tax."

Thus it will be seen the assessment was authorized when the tax roll was made; but before any collections had been made under that law, to wit, on the twenty-ninth of Novem-

ber of the same year, the said thirtieth section of the act of April 22, 1871, was amended and substituted by another, in which it is expressly provided that the commissions above described, "to which justices of the peace are entitled, together with the commissions of sheriffs for collecting taxes, shall be paid out of the general revenue."

That this is an entire repeal of the former provision cannot be doubted; for it is an entire substitution of the whole section by name; and that it is so considered, we refer the court to the Digest, where it is totally omitted, and the substituted section is printed in place of it. (Paschal Dig., art. 7684; see The State *v.* Horan, 11 Tex., 144; Bryan *v.* Sundberg, 5 Tex., 418; Rogers *v.* Watrous, 8 Tex., 62; Stirman *v.* The State, 21 Tex., 734; and other authorities cited, Paschal's Dig., note, 1012.)

The history of these laws may be necessary for a clear understanding. The law of 1870 was very lengthy and confused, and upon trial it was found, in the then state of the country, it could not be made effective. Hence the comptroller did not issue any instructions under the law at all, but rather waited for the meeting of the adjourned session, which met in April, 1871. On the 22d of April a second law was passed, and under that law the assessment was made; but as much time was required for getting out the instructions and for making the assessment, the tax rolls were not completed and filed in this case in the comptroller's office till the ninth of October, 1871.

Within fifty days thereafter (the Legislature having again assembled) the 30th section of the law of April 22 was substituted and repealed by the act of twenty-ninth of November, 1871;—this repeal being brought about chiefly by the clamor that was raised against taxing the justices' fees and commissions for assessing against the tax-payer, in addition to the already onerous burdens imposed by the law, and in so far it was intended as a lightening of the burden of taxation.

The tax aforesaid, (viz., the fees and commissions,) not hav-

ing been collected from or paid by the people, they were relieved therefrom, and the sheriff had no right to collect it. Had he collected it, the amount could have been recovered back from him at the suit of the tax-payer. If it could not be legally enforced as a charge against the citizen, it follows that it cannot be enforced against the sheriff in his account.

We therefore conclude that it was not only error to refuse the charges as asked by the defendants, but it was a much graver error in the judge to charge the jury that "the legality of the tax was not a question in the case;" and, further, "that the defendant is liable for the whole amount of the assessment rolls which he does not account for, either by payment into the treasury of the State or by his delinquent list," especially when, by the next paragraph, he told the jury the accounts as furnished by the comptroller were evidence against the defendant. There was nothing left under such a charge for the jury to determine, and for such charge the case must be reversed.     *     *     *

*George Clark, Attorney General,* and *Sheeks & Sneed,* for the State.

1. The general demurrer and the motion in arrest of judgment were properly overruled. (Zacharie *v.* Bryan, 2 Tex., 274; Frosh *v.* Swett, 2 Tex., 485; State *v.* Evans, 32 Tex., 200; Wells *v.* Fairbanks, 5 Tex., 582; De Witt *v.* Miller, 9 Tex., 239; Williams *v.* Warnell, 28 Tex., 610; see page 612, 28 Tex., for the rule established for these cases.)

2. It is no defense to a suit against a defaulting sheriff that the tax was illegal. (State *v.* Cunningham, 8 Blackf., 340.)

The tax-payer may resist the payment of an illegal tax, but if he pay it voluntarily, he can never recover it back. This is the rule in England, in New York, Pennsylvania, Ohio, Maine, Massachusetts, Indiana, and other States, and in the Supreme Court of the United States. (Oates *v.* Hudson, 5 Eng. Law and Eq. Rep., 469, and note; Silliman *v.*

Wing, 7 Hill, 159; Fleetwood *v.* City of New York, 2 Sandf., 475; Allentown *v.* Saeger, 20 Pa. St. Rep., 421; Mays *v.* City of Cincinnati, 1 Ohio St. Rep., 268; Smith *v.* The Inhabitants, &c., 27 Me., 145; Boston, &c., Co. *v.* Boston, 4 Metc., 181; 17 Ind., 326, 336; Elliott *v.* Swartwout, 10 Pet., 137.)

If the tax-payers paid any portion voluntarily, the money belonged to the State, and not to the sheriff. He gets credit for all moneys he pays into the treasury, and for the amount of the delinquent list, but he must account for the balance of the assessment-rolls which went into his hands. If he found that the tax was illegal and uncollectable, he could report it as part of the delinquent list, and get his credit for it. But if he collected one dollar or ten thousand dollars of that tax, which was paid to him voluntarily, he could not put the money into his own pocket. The State is to be the beneficiary, and not the sheriff.

MOORE, ASSOCIATE JUSTICE.—If there was any defect in the original petition which could have been reached by a general demurrer, it was unquestionably cured by the amendments filed by appellee before the case came to trial. The motion in arrest of judgment was, therefore, properly overruled.

The objection that the certified transcript from the books of the comptroller of public accounts, showing a statement of account between the State and appellant, W. H. Morris, was not admissible in evidence, because said accounts are not the character of accounts· contemplated in the statute under which said transcript was admitted in evidence, is untenable. But if the objection was well founded, as it was not made in the court below, appellants cannot insist upon it here. If the objection had been taken in the District Court, we cannot say that the facts sought to be established by said transcript would not have been proved by other competent and satisfactory evidence.

The appellants made no objection whatever to the introduction in evidence of the statement from the comptroller's

office, but objected merely to the validity of some of the entries in the account. These objections went rather to the effect of the statement than to its admissibility in evidence. The items of the account to which exception was taken were, first, to the item of $1,324.46, charged on the account of 1871 as collectable on the assessment for 1870, for frontier bond tax, because the levy of said tax was not authorized by any particular person or body, or for any particular amount or rate, and because the statute under which said tax was claimed to have been levied was void and inoperative by reason of its uncertainty; and, second, to the item of $1,687.50, charged in the statement of account for 1871 as justices' fees and commissions collected by appellant Morris.

The validity of these items as charges against appellants are presented for our determination, not only by the objections to the certified transcript from the books and records of the comptroller, but also by exceptions to the instructions given by the court to the jury, and to its refusal to give the several charges asked by appellants in reference to the same matters.

If the validity of the frontier bond tax charged on the appellant Morris's account for 1871, as collectable on the assessment of property and occupations, as made under the general laws of the State for the year 1870, was in question between the collector and the tax-payer, the objections which appellants made to this tax would unquestionably be well taken, and should be sustained. But the question before us is altogether different from that which we would be called upon to decide if this was a suit to enforce the payment of the tax by the tax-payer, or involved the title of property sold by the sheriff for its payment. We are not called upon to determine whether the individual tax-payer can be coerced into the payment of this tax, but whether the collector can, as against the State, hold on to the money thus collected under color of law, admitting the levy to have been illegal, and the collection of the tax, as against the tax-payer, to have been altogether

unwarranted. The proper answer to such a proposition, evidently, can admit of no controversy or dispute. Unquestionably, when an officer has collected taxes for the State, under color of legal authority, or under pretense that he is authorized to do so, he will not be heard to controvert the validity of the law or authority under which he has acted, or dispute the right of the State to money thus coming into his hands. Hence, the court did not err in instructing the jury that the legality or illegality of the tax was not a question for their determination in this case. Appellants were, unquestionably, liable for the full amount of taxes with which Morris was chargeable on the assessment rolls, or which he was in any way otherwise authorized to collect, and which he failed to pay into the treasury, or which he fails to show by the delinquent list, or by other satisfactory evidence, remained uncollected when he went out of office, and with which his successor is properly chargeable.

The objection to the amount charged on the account for 1871, for commissions and fees for justices is equally unfounded. It is not controverted that this tax was imposed by the 30th section of the tax law of April 22, 1871; but appellants claim that, as it is shown that the assessment roll for the year 1871 was not lodged in the office of the comptroller until the 9th of October, 1871, and as said 30th section of the act of April 22, 1871, was substituted and repealed by the act of the 29th of November, of the same year, that it should be inferred that this tax was never collected. But the conclusion insisted upon certainly cannot be legitimately inferred from the premises from which it is sought to be deduced. The sheriff was not forbidden to collect the taxes until a copy of the assessment roll had been lodged in the office of the comptroller. The time at which he should enter upon the discharge of this duty was fixed by law. The duty of making and transmitting a copy of the roll to the comptroller did not devolve upon him; but if it was conceded that he could not or did not commence the collection of

taxes until after the return of the roll to the comptroller, certainly there was still ample time within which a large portion, if not the entire amount of the tax, might have been collected, between the deposit of the roll with the comptroller and the repeal of the law requiring the sheriff to collect the tax in question; and if the whole, or any part of it, was uncollected when the law was repealed, it devolved upon appellants to show it. And we may here remark, that appellants claimed and were allowed credit for so much of this tax, as well as the frontier bond tax, as had not been collected by Morris when he went of office.

The court did not err in refusing to charge the jury to allow appellants credit for commissions for collecting the additional amounts of taxes which had been paid by Morris since the account upon which the suit was brought had been made up by the comptroller. There was nothing in the answers of the defendants, or in the proof adduced on the trial, to call for or warrant the charge. If the sheriff was entitled to commissions on the additional amounts paid into the treasury, he should, and in all probability did, at the time such payments were made, get a warrant for the same, upon which his commissions have been, or may yet be paid him. He seems, however, by his failure to settle his accounts with the treasurer as prescribed by law, to have forfeited all claim to commissions. (Paschal's Dig., art. 7694.) And certainly in an action of this kind, before such credit can be allowed, it should have been presented to and passed upon by the comptroller. (Paschal's Dig., art. 7695.) Evidently appellants have no cause to complain of a want of liberality on the part of appellee or the court, in giving them the benefit of all payments, credits, and offsets to which they showed themselves in any way entitled.

The court, of its own motion, gave judgment for ten per cent. upon, and in addition to, the amount of damages assessed by the jury. No judgment of this character is suggested or asked for by appellee, either in the original or amended peti-

tion.   We have been cited by counsel to no statute authorizing it, and none such has come under our observation. The 2d section of the act of April 28, 1873, authorizes a judgment of five per cent. per month against the sheriff and his sureties on the amount of indebtedness found to be due and owing in such actions from the time the same is found to have been due; and it insisted for appellee, as the judgment rendered is not so onerous as it might have been if this statute had been followed, appellant has no just cause of complaint.   (Paschal's Dig., art. 7694.)   But it seems quite evident, that neither the verdict nor judgment conforms to the requirements of this statute, and we do not feel authorized to mould the judgment so as to fulfill them.   The judgment of the court in this particular is not supported by the verdict, or warranted by law.

It is therefore ordered that the judgment be reversed, and that judgment be here rendered against appellants in favor of appellee for the amount found by the jury; and that all costs incurred in this  court and in the court below, be taxed against appellee.

REVERSED AND REMANDED.