DAVIS, Tax Collector, v. RILEY et al.

(Court of Civil Appeals of Texas. Austin. Feb. 19, 1913.)

TAXATION (§ 526*)—POLL TAX—PAYMENT—TIME—ISSUANCE OF RECEIPTS—NUNC PRO TUNC—AUTHORITY OF COLLECTOR.

Rev. Civ. St. 1911, arts. 2943, 2944, 2945, 2957, 7615, 7616, required the tax collector to keep his office at the county seat, making it his duty, however, to meet the citizens throughout the county in their respective precincts at such time as he should indicate for the payment of their taxes, but, if they failed to take advantage of such opportunity, they were then required to pay the same at the office of the collector, except in counties containing a city or town of more than 10,000 population other than the county seat, in which case the collector during January in each year is required to have a sworn deputy in such town, who is authorized to accept poll taxes and give receipts therefor. Terrell's Election Law, § 152 (Acts 29th Leg. 1st Called Sess. c. 11), provides that all poll taxes shall be paid on or before the 1st day of February of each year, and makes it a penal offense for the collector to receive poll taxes and antedate the receipts therefor after such time. *Held* that, since payment by a citizen of his poll tax at any other place than the office of the collector does not in law constitute a payment of the tax, so as to entitle the taxpayer to a receipt on which he can vote, unless made to a deputy in a town of 10,-000 inhabitants other than the county seat, payment of poll taxes by citizens not residing in such a town, on January 30, 1912, to a private agent authorized to pay the same to the tax collector and receive the receipts, which did not reach the tax collector until the 1st and 2d days of February, 1912, did not entitle

the taxpayers to receipts dated as of January 31, 1912, so as to enable them to vote thereon.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 969; Dec. Dig. § 526.*]

Appeal from District Court, McLennan County; Richard I. Munroe, Judge.

Mandamus by John Riley and others against Lee R. Davis, Tax Collector. Decree for complainants, and defendant appeals. Reversed and rendered.

Pat M. Neff and D. C. Woods, both of Waco, for appellant.

RICE, J. This suit was instituted, as appears from appellant's brief, in the district court of McLennan county, on the 12th day of March, 1912, by John Riley and 70 others, all of whom were citizens of the town of West, in McLennan county, against Lee R. Davis, as tax collector of said county, to compel the said Davis by mandamus to issue to plaintiffs poll tax receipts and exemption certificates for the year 1911 as of date January 31, 1912, when the orders and money in payment therefor were not tendered until the 1st and 2d days of February, 1912. The plaintiffs were divided by the petition into three groups, designated "a," "b" and "c." The allegations of the petition, which were supported by the undisputed evidence, establish the following facts: That on the 30th day of January, 1912, the plaintiffs named in group "a" delivered to one C. W. Holloway, at West, Tex., the sum of $1.75 each, being the amount of state and county poll taxes assessed against and due from each of them for the year 1911, and at the same time they each filled out and signed a blank statement, by which they authorized one W. H. Crim at Waco, Tex., to deliver the said sums of money to Lee R. Davis, tax collector, in payment of their said poll taxes for the year 1911. The statement in question also contained all necessary information to fill out the blanks and the poll tax receipts, and authorized said Crim to deliver same to the tax collector. The said order, together with the money, was forwarded by Holloway to said Crim by mail on the 30th day of January, 1912. The plaintiffs included in group "b" of the petition pursued the same course with reference to their poll taxes as those named in group "a," with the exceptions that the alleged payments were made on January 31st and the authorizations forwarded to said Crim on said date. The plaintiffs named in group "c" pursued the same course as above outlined, except that they each authorized said Crim by written statements to apply for and receive from the tax collector their exemption certificates instead of poll tax receipts; it being alleged and shown that they were over the age of 60 years. The evidence further established, without question, that the orders were presented to appellant, Lee R. Davis, tax collector, at his

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

office in Waco, on the 1st and 2d days of February, 1912, by said Crim, and he (Davis) returned the same, together with the money inclosed, to said Holloway at West, refusing to issue the poll tax receipts and exemption certificates, as requested by plaintiffs. The case was submitted to and tried by the court without a jury, and resulted in a judgment in favor of plaintiffs awarding the writ of mandamus as prayed for, from which judgment this appeal is prosecuted.

The court filed its conclusions of fact and law, wherein it found, among other things, as a fact that Davis had authorized Holloway, his deputy at West, to receive, from persons subject to the payment of poll taxes, their poll taxes prior to the 1st day of February, 1912; and concluded, as matter of law, that such payment constituted a payment of their poll taxes as of the date when the money was paid to Holloway; and that the said plaintiffs, under the facts, were entitled to have issued to them by said Davis their poll tax receipts and exemption certificates as of date January 30 and 31, 1912—upon which findings are predicated appellant's respective assignments of error.

The evidence, in addition to what has been outlined, we think establishes the fact that, at the time Holloway received plaintiffs' money for poll taxes and the applications for certificates of exemption, he was not authorized to do so, because, while he was deputy tax collector of McLennan county, his duties had been limited by his principal merely to receiving and collecting ad valorem taxes. It further appears that Holloway so understood the limitation of his authority, and had not undertaken to issue any poll tax receipts or exemption certificates. It seems, however, that at his suggestion blank authorizations were sent him by Davis for the convenience of taxpayers, and that his custom was to receive poll tax money from citizens desiring to pay their poll taxes, requiring them to fill out said blanks addressed to said Davis, authorizing Crim to pay their poll taxes for the year 1911, etc., containing the requisite information, from which the collector might be able to fill out the tax receipts, and that he would then forward said money and said orders to Crim, who it was understood would deliver same to said Davis, and he would afterwards issue the receipts or certificates in accordance therewith. The same procedure as above indicated was gone through with reference to plaintiffs' poll tax exemptions; Holloway merely forwarding to Crim orders for their exemption certificates, together with the requisite data to secure them from appellant. Davis left similar blanks at every bank in the county outside of Waco for the convenience of the people, where any one could get them, and, where there were no banks, they were left with merchants.

The evidence indicates that at the time Holloway received the money and orders, which he forwarded, he was acting rather in the capacity of a private citizen for accommodation, and that he so regarded it. It is shown that he had acted in the same capacity for citizens of Hill county as he did for those of McLennan, at which time he was not a deputy collector for Hill county. Mr. Davis testified that, in obedience to instructions from the Attorney General's office received in the summer of 1911 to the effect that poll taxes could not be paid at any place except the county seat, he notified his deputies in the country towns, including West, that they could not issue any more poll tax receipts, and that he would visit these towns during the tax collecting season, at which time the people could pay their poll taxes, and those failing to do so would have to apply at the office; and that before going to said places he published in the papers that he would come, which notices were inserted in the West paper; that he kept said appointments; that he had no objection to issuing poll tax receipts and exemption certificates to plaintiffs, but had refused to issue and antedate them, because the same was in his judgment a violation of the law.

In our opinion the court erred in holding that Holloway received such taxes and orders as deputy tax collector of said county; and erred in concluding, as matter of law, that said plaintiffs were entitled to receive their tax receipts and exemption certificates, and that it was the duty of Davis to issue them as under date of January 30 and 31, 1912, because the facts clearly show that at the time said money was received Holloway was not the deputy collector of said county for the purpose of receiving said money, and, furthermore, he had no authority to receive same.

Article 16, § 14, of the Constitution of the state provides that all county officers shall keep their offices at such places as may be required by law. Article 7616 of the Revised Statutes of 1911, requires that the collector of taxes shall keep his office at the county seat of his county. Article 7612, Id., authorizes the appointment of deputies by tax collectors. Article 7614, Id., makes it the duty of the tax collector to collect all taxes due the state or county, and pay the same over to the proper authorities. Article 7615, Id., requires the collector to begin the collection of taxes annually on the 1st day of October, or as soon thereafter as he may be able to obtain the proper assessment rolls, and likewise provides that he shall appoint a day in each voting or magistrate's precinct in his county, where said taxpayers are required to meet him for the purpose of paying their taxes, having first given the requisite notice of such time and place; and it shall be the duty of said collector, or his deputy, to attend at such times and places

for the purposes aforesaid, and shall remain at least two days, etc. And article 7616, Id., also provides that all persons who shall fail to pay their taxes at such precinct meetings as provided in the preceding article, shall call at the office of the collector and pay the same. Article 2957, Id., provides that, in all counties containing a city of 10,000 inhabitants or more, other than the county seat of such county, it shall be the duty of such collector to have a duly authorized and sworn deputy to represent him for the purpose of accepting poll taxes and giving receipts therefor, who shall keep his office for such purpose at some convenient place in said city during the entire month of January of each year, and shall publish four weeks' notice of the authority of such deputy and the location of the office. Article 2942, Id., after stating who is subject to the payment of poll taxes, provides that the same shall be paid at any time between the 1st day of October and the 1st day of February following, and upon payment of same the taxpayer shall be entitled to his poll tax receipt, even though his other taxes are unpaid. Article 2943, Id., indicates who are exempt from the payment of poll taxes; and article 2944, Id., provides that, if the taxpayer does not reside in a city of 10,000 inhabitants or more, his poll tax must be paid either by him in person or by some one duly authorized by him in writing to pay the same, and shall furnish the collector the necessary data to fill out the blanks in the poll tax receipt, which authority must be signed by the party who owes the poll tax and deposited with the collector and filed and preserved by him. It is provided, among other things, in article 2945, Id., that, when the tax is paid by an agent, the receipt shall not be delivered to such agent, but shall be sent by mail to the taxpayer, or kept and delivered to him in person by the tax collector. Section 152 of the Terrell Election Law (Acts of 1905, 1st Called Session of the 29th Leg. p. 558) provides, among other things, that any collector of taxes who shall issue a poll tax receipt after the 1st day of February of any year, bearing a date prior to said time, shall be guilty of a misdemeanor.

So it will be observed that these provisions require the collector to keep his office at the county seat, making it his duty, however, to meet the citizens throughout the county in their respective precincts at such time as he shall indicate for the payment of their taxes. But in the event they should fail to take advantage of this opportunity, it then becomes their duty to pay the same at the office of the collector, except in counties containing a city or town of more than 10,000 population other than the county seat; in which case such collector, during the month of January of each year, shall have a sworn deputy in said town, who is authorized to accept poll taxes and give receipts therefor. The law further provides that all poll taxes shall be paid on or before the 1st day of February of each year, and makes it a penal offense for the collector to receive poll taxes and antedate the receipts therefor after said time.

In the present case it appears that the town of West contains a population of less than 10,000 inhabitants, and therefore was not entitled to a deputy collector. It follows from what we have said, in our opinion, that Davis had no right to authorize Holloway to receive the poll taxes at West, and issue receipts therefor; but the evidence shows that he did not undertake to do so. Holloway was acting in his private capacity for the accommodation of the plaintiffs. The money and orders were only sent through him to Crim, and it was intended at the time he received the money that no receipts should be issued, except by the collector. It is true, the testimony shows that he called the tax collector's office at Waco by phone on the afternoon of January 31st, asking if they would take care of all poll taxes, money for which was paid during business hours of said day, and obtained an affirmative reply thereto.

The payment by a citizen of his poll tax at any other place than the office of the tax collector does not constitute in law a payment of said tax, so as to entitle the taxpayer to a receipt, unless such payment be made to the collector while on his rounds throughout the county, or to a duly authorized deputy in a town of 10,000 inhabitants other than the county seat, for which reason appellees were not entitled to the issuance of such receipts and certificates under the facts. That plaintiffs in good faith paid the money to Holloway, under the belief that they would be entitled to them regardless of when such money and orders reached Waco and were presented by Crim to the collector, is immaterial and cannot change the result, because "ignorance of the law excuseth no one." Nor could the collector in this instance estop himself by reason of the promise made by his office in response to Holloway's inquiry, heretofore alluded to, because such promise was in contravention of law, and could not furnish a basis for such a plea. The plaintiffs, under the circumstances, constituted Holloway and Crim their agents to receive and deliver said money and orders to the collector, and must abide by their failure to deliver the same within due time. While the collector could have received the money and orders when tendered to him at his office, and issued the receipts and certificates as of date when in fact received by him, still he was not justified in receiving and antedating such receipts and certificates; and to hold otherwise would be to override the plain letter of the statute, and say that the lawmakers did not mean what was plainly declared by them—that is, that no collector or his deputy can receive poll taxes at any other place than his office at the county seat, except in the two instances heretofore mentioned, which did not obtain in the instant case. If he had issued the receipts

and certificates when Crim tendered the money and orders as of that date, of course, plaintiffs would not have been entitled to vote by reason thereof; and if he had antedated them he would have violated the law, subjecting himself to punishment. If the plaintiffs were disqualified as voters for said year by reason of their failure to pay the poll taxes and procure the exemption certificates within due time, it was chargeable to the fault and neglect of their own agents.. The law is plain, and must be followed.

We therefore hold that the court erred in issuing the writ of mandamus as prayed, for which reason its judgment must be reversed and here rendered for appellant.

Reversed and rendered.