**OLIVER, Tax Collector, v. LINDSAY et al.**

No. 10506.

Court of Civil Appeals of Texas. San Antonio.

Feb. 15, 1939.

Rehearing Denied March 15, 1939.

1098

Smith & Hall, of Edinburg, for appellant.

Grade Callaway, of Edinburg, and B. D. Kimbrough and Griffin & Kimbrough, all of McAllen, for appellees.

MURRAY, Justice.

This suit was instituted by R. W. Lindsay, complaining of J. J. Oliver, Tax Assessor and Collector of Hidalgo County, Texas, and Hartford Accident and Indemnity Company, Hartford, Connecticut, as surety on Oliver's bond as tax collector and assessor. It appears that R. W. Lindsay being desirous of paying and discharging the taxes levied and assessed against certain lands owned by him in Hidalgo County, acting by and through his agents, George L. Martin and M. F. (Pat) Lindsay, went to the office of the defendant, J. J. Oliver, tax collector and assessor in the court house in Edinburg, and there contacted R. S. Hibbetts, who was at the time a deputy tax collector, informed him that R. W. Lindsay desired to pay his taxes. Hibbetts invited Martin to come to another part of the court house, where they could find a table that was not occupied. This he did and in a room in the court house which was not in fact ordinarily used by the tax collector and assessor, but which was in fact a part of the office of the Justice of the Peace, counted out the sum of $4900 and delivered the same to Hibbetts and received from Hibbetts a certificate that all taxes had been paid upon the property owned by R. W. Lindsay, and Hibbetts further informed Martin that it would take some time to prepare the regular tax receipts and redemption receipts, but that as soon as they were prepared he would mail them to Martin. Hibbetts further informed the agents of R. W. Lindsay that the sum of $4900 was sufficient to pay all of the taxes then due against the property. Hibbetts had, on a former occasion, informed Martin that the total amount of taxes against the property was the sum of $5600, but that there were certain savings that could be made and that he would let him know later the exact amount of money it would take to clear up the taxes. Thereafter Hibbetts notified Martin that the sum of $4900 was sufficient to clean up all the taxes and that he should bring this sum of money to the court house in cash, if he wanted a tax certificate at once, for the reason that if he gave a check for this sum he could not

secure his tax certificate until the check had cleared the bank. Hibbetts received the $4900, as above stated, but apparently he never paid this money over to Oliver and failed to account for it in any way. Neither were the regular tax certificates ever issued, and R. W. Lindsay is here seeking to have said sum of $4900 credited to him as at least a part payment on all taxes which may be due by him on the property in Hidalgo County.

The case was tried before the court without the intervention of a jury and resulted in a judgment in favor of R. W. Lindsay against J. J. Oliver as tax assessor and collector, requiring him, in effect, to allow R. W. Lindsay a credit of $4900 on his taxes. Costs were adjudged against Oliver and the Indemnity Company. The judgment further provided that the Hartford Accident and Indemnity Company should have a judgment over and against J. J. Oliver personally for any and all sums which it might be required to pay in discharge of the judgment in favor of R. W. Lindsay. From this judgment J. J. Oliver has appealed.

This appeal presents two main contentions: First, that Oliver would not be liable for the money because it was paid to a deputy at a place other than the office of the tax collector; and, second, that Oliver would not be responsible because the sum of $4900 was not sufficient to pay the taxes due, as it was necessary to have certain negotiations to secure certain savings before the sum of $4900 would be sufficient to liquidate the total amount due as taxes by Lindsay, and that therefore Hibbetts was the agent of Lindsay and not the deputy of Oliver when he received the money.

There seem to be no authorities directly in point in this State on either proposition. Appellant cites the case of Davis v. Riley, Tex.Civ.App., 154 S.W. 314, holding in effect that a deputy tax collector as a general proposition would not have authority to collect poll taxes at a place other than the county seat. There are many provisions of the statutes with reference to the payment of poll taxes which have no application to other taxes. Art. 2961, R.C. S.1925, deals with the mode of paying poll taxes. Art. 2962, Id., is with reference to paying poll taxes in large cities. Art. 2963, Id., Vernon's Ann.Civ.St. art. 2963, contains provisions applicable where a poll tax is paid by an agent. Art. 2971, Id.,

provides for a deputy tax collector in a city of more than 10,000 inhabitants, not a county seat, who may collect poll taxes. Art. 198, Penal Code 1925, makes it a misdemeanor for a tax collector to issue a poll tax receipt after the 1st day of February in any year and bearing a date prior to the 1st day of February. All of these provisions of the statutes entered into the decision in the Davis v. Riley case as the payment of poll taxes was there involved. Furthermore the deputy did not purport to act in his official capacity. He received the money not simply in a part of the court house not occupied by the tax collector, but in a town not the county seat. The money when paid was accompanied by a power of attorney to one Sims authorizing him to pay the poll taxes, thereby demonstrating beyond any doubt that the parties did not even think they were paying their poll taxes to the deputy but rather sending their money to Sims that he might pay their poll taxes for them. It, therefore, becomes apparent that that case is not in point here.

Art. 7255, R.C.S.1925, provides, in effect, that it shall be the duty of the tax collector or his deputy to make two trips over the county for the purpose of meeting the taxpayers and collecting taxes.

Art. 7256, Id., in effect, requires the tax collector to keep his office at the county seat and further provides that if the taxpayer fails to meet the collector or his deputy and pay his taxes, then it shall become the duty of the taxpayer to call at the office of the tax collector and pay his taxes. There is a further provision for maintaining a deputy tax collector in cities not the county seat that contain more than 7000 inhabitants and as a matter of fact the article as now amended (see Art. 7256, Vernon's Ann.Civ.St.) contains the following provision: "Provided further that in all counties having a population of more than seventy thousand (70,000), according to the last preceding Federal Census, and containing one or more cities or towns, other than the county seat, each of which has in excess of one thousand (1,000) inhabitants according to the last Federal Census, said Assessor and Collector of Taxes * * * may appoint a deputy * * * in each such city or town * * *."

■ It is appellant's contention that it is the effect of the above statutes to make all payments made to the collector outside of his office in the county seat abso-

lutely void unless such payments are made to the collector while he is making a regular tour of the county or unless made to a deputy collector in a city of 7000 inhabitants or more, or made under other circumstances authorized by law. We can give no such meaning to the statute. It will be kept in mind that the collector is not required to keep his office in the court house of the county but only at the county seat. The law might be sufficient to put the taxpayer on notice that the collector's office is required to be in the county seat, but would not put him on notice as to just where in the county seat his office would be located. Furthermore, the law requires the taxpayer to "call" at the office of the tax collector. It seems to us the purpose of the law was to make it the duty of the tax collector to "call" on the taxpayer twice and then to relieve him from any further duty to "call" on the taxpayer, but rather thereafter to make it the duty of the taxpayer to "call" upon the tax collector and pay his taxes.

However, should Art. 7256, Id., be given the strict construction contended for by appellant, we would still be of the opinion that Martin, as Lindsay's agent substantially complied with the law. Martin did "call" at the tax assessor and collector's office in the court house and was led out of the office by Hibbetts and down in the basement where a vacant table was found, on which the money was counted out and the tax certificate delivered to Martin. Martin did not know just what offices in the court house were occupied by the tax assessor and collector and which were occupied by other officers. He did know that the tax collector did have an office in the basement for the purpose of collecting automobile taxes. It seems the office in which the money was actually counted was occupied by a Justice of the Peace. Where the taxpayer calls at the office of the tax collector and is induced to step outside of the office, either one foot or one hundred feet before the money changes hands, he has paid his taxes and a tax collector or his deputy cannot render such payment void by merely leading the taxpayer out of his office before accepting the money.

Furthermore, in Hidalgo County the commissioners' court had not passed any resolutions or orders determining just what offices should be occupied by the assessor and collector of taxes. The office space in the court house had been appropriated by the various officers more or less by common consent. There was no place where a taxpayer could go and determine definitely just where the office of the tax assessor and collector was located, or the bounds thereof, other than to judge the same by the appearance of things. We overrule appellant's first contention.

With reference to the second contention, we are of the opinion that when Martin as the agent of R. W. Lindsay, paid to the deputy the exact sum of money which that deputy required as being sufficient to pay all taxes, that R. W. Lindsay did all that was required of him to pay his taxes at least to the extent of the money paid. It is true that Martin and Lindsay had been informed that the total amount of the taxes was $5600, but they were also informed that there were certain savings which could be made and that they would be told the exact sum of money required to liquidate Lindsay's taxes. Neither R. W. Lindsay nor his agents, Martin and Pat Lindsay, knew just how or why these savings could be made, they left this entire matter to Hibbetts. Hidalgo County had entered into a contract and understanding with certain bond-holders and certain road districts whereby tax certificates could be purchased by taxpayers at a discount and used in payment of the taxes, thus effecting a saving, and a tax agency was set up in the court house for the purpose of handling this transaction. The evidence shows that as a matter of fact these tax-saving transactions were nothing more than a mere matter of form; that in at least 90% of the cases the tax collector merely collected from the taxpayer a sum sufficient to pay his taxes after allowing the savings, and that these savings were accomplished by a transaction had between the tax agency and the tax collector, which was a mere matter of form.

Under such circumstances we do not feel that the fact that these purely formal and perfunctory transactions had to take place before the money paid by Martin would be sufficient to liquidate Lindsay's taxes, would be sufficient to strip Hibbetts of his official capacity when he received the money. Neither do we think that the fact that it was necessary for Hibbetts to go through these purely formal and perfunctory transactions with the tax agency would constitute Hibbetts Lindsay's agent rather than the agent of Oliver.

The trial judge having found in favor of Lindsay and no findings of fact having been requested or made, other than the partial findings found in the judgment, the evidence must be considered in the most favorable light to Lindsay. When this is done it must be concluded that Hibbetts purported to act in his official capacity; that neither R. W. Lindsay nor his agents knew how the savings were to be made, but relied upon Hibbetts' statement that $4,900 was sufficient to take care of all taxes due on the property involved in this suit. Under such circumstances Oliver would be estopped to deny his liability caused by the payment of the $4,900 to his duly authorized deputy. Art. 7252, R. C.S.1925, Vernon's Ann.Civ.St. art. 7252; Richards v. Hatfield, 40 Neb. 879, 59 N.W. 777; Texas & N. O. Ry. Co. v. State, 43 Tex.Civ.App. 580, 97 S.W. 142; Morris v. State, 47 Tex. 583, 592; Webb County v. Gonzales, 69 Tex. 455, 6 S.W. 781; City of San Antonio v. Tobin, Tex.Civ.App., 101 S.W. 269; Pfeffer v. Mahnke, Tex. Com.App., 260 S.W. 1031.

Accordingly the judgment will be affirmed.