**PFEFFER et al. v. MAHNKE et al.***
(No. 437–3908.)

(Commission of Appeals of Texas, Section B.
April 23, 1924.)

1. **Evidence ⟲⟳43(3)—Court cannot take judicial notice of records in another case.**

Where parties to another suit were not parties to instant suit, and issues involved in the two suits were different, court could not in instant case take judicial notice of their own records in the other.

2. **States ⟲⟳46—Requirement for appointment of chief clerks mandatory.**

Requirement of Rev. St. arts. 4318, 4343, that secretary of state and comptroller shall each appoint a chief clerk is mandatory; office of chief clerk of each being created by statute.

3. **Schools and school districts ⟲⟳47—Chief clerks exercise statutory authority in performing duties of comptroller and secretary of state on board of education.**

In view of Rev. St. art. 2727, service of secretary of state and comptroller on board of education is performance of duty attached by the statute to their offices, and, since by arts 4319, 4343, their chief clerks may in certain contingencies perform duties attaching to the offices, in such cases, their duties are performed by virtue of statutory authority and not by delegation of authority from their chiefs.

4. **States ⟲⟳44—Chief clerks of comptroller and secretary of state are "public officers."**

Chief clerks of comptroller and secretary of state, authorized by Rev. St. arts. 4318, 4343, are "public officers" in same sense and created by same authority as other statutory officers.

5. **Evidence ⟲⟳83(1)—Acts of public officers presumed legitimate.**

Acts of public officers are presumed to have been done in proper exercise of legitimate powers, unless contrary be shown.

6. **Evidence ⟲⟳366(1)—Copy of decision by chief clerks of comptroller and secretary of state held admissible as act of members of state board of education.**

Certified copy of a decision of state board of education, rendered by chief clerks of comptroller and secretary of state, sustaining decision of state superintendent of education, *held* admissible in absence of evidence showing that the persons acting as chief clerks were such in fact, and that contingencies prescribed by Rev. St. arts. 4319, 4343, permitting them to act in absence of their chiefs, had occurred.

Certified Questions from Court of Civil Appeals of Fifth Supreme Judicial District.

Mandamus by Herman Mahnke and others against M. C. Pfeffer and others. Judgment for relators, and defendants appealed to the Court of Civil Appeals, which certified questions to the Supreme Court. Questions answered.

C. G. Krueger, of Bellville, for appellants.
W. W. Searcy, of Brenham, and Johnson, Matthaei & Thompson, of Bellville, for appellees.

HAMILTON, J. The questions involved in this case are presented in a certificate from the Court of Civil Appeals for the First Supreme Judicial District at Galveston, which follows:

"The questions hereinafter formulated, which we deem advisable to certify for your decision, arise upon a statement of the facts appearing from the record in this cause now pending on rehearing in this court, to wit:

"At the suit of Herman Mahnke and others, hereinafter termed relators, resident citizens within common school district No. 25 of Austin county, Tex., and parents of children entitled to attend the public free schools established in that district, the district court of Austin county in this proceeding issued its writ of mandamus against M. C. Pfeffer and others, hereinafter termed respondents, as the duly elected and qualified trustees of that district, commanding them to locate a site and establish a public school in the district as near the center of the white scholastic population thereof as practicable. From that judgment the respondents Pfeffer and others perfected their appeal to this court. In passing on that appeal upon original hearing this court in part said:

"'The cause is a branch of the litigation reflected in another feature by a separate and distinct case from the same trial court, and decided there on the same day, an appeal in which is likewise at this time pending in this court, the latter suit being No. 8297 here, and styled Emil Berndt et al., Appellants, v. F. C. Kloss et al., Appellees, 262 S. W. —.

"'This Berndt suit was one seeking a division of district 25 into two districts, and in defense of the present suit for mandamus against them the respondents, in the court below, fully pleaded its pendency as follows:

"''Defendants further show to the court that on the —— day of February, A. D. 1920, the state board of education of the state of Texas, by an order duly made, ordered that the county board of school trustees divide said alleged common school district No. 25 of Austin county, Tex., and create two separate and distinct districts thereof.

"''That on the 31st day of July, A. D. 1920, Emil Berndt et al., filed a suit in the district court of Austin county, styled and numbered as follows, to wit: Emil Berndt et al., v. F. C. Kloss et al., No. 5979, praying for a division of said alleged common school district No. 25 of Austin county, Tex.; that Emil Berndt and the other parties plaintiff in said suit are resident citizens of common school district No. 25 of Austin county, Tex., and have children within scholastic age who are entitled to public education, and that F. C. Kloss, Wm. Buenger, Frank Sebesta, A. C. Theumann, Philip Frietag, who are named as some of the defendants in said suit, are the duly elected, qualified, and acting county school trustees in and for Austin county, Tex., whose duty it is under the law to change common school districts and create new school districts.

---

⟲⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing in Supreme Court set for December 10. 1924.

" 'Defendants · further show unto the court that, after said suit was filed as aforesaid, the county board of school trustees in and for Austin county, Tex., met at the courthouse in Bellville, in Austin county, Tex., on the 2d day of August, A. D. 1920, and divided said alleged common school district No. 25 into two separate and distinct districts, and created thereof two districts, and named and numbered them as follows, to wit: Ives' Creek school district No. 25 and Bradbury school district No. 26.

" 'Defendants further show to the court that the alleged common school district No. 25, as the same was attempted to be created on the 15th day of March, A. D. 1919, has not any longer any legal existence by reason of the action of the county board of school trustees of Austin county, Tex., taken on the 2d day of August, A. D. 1920, as aforesaid.

" 'Defendants further show to the court that, after said suit was filed, styled Emil Berndt et al. v. F. C. Kloss et al., No. 5979, a copy of which petition is hereto attached, marked Exhibit A, and made a part hereof, and after the county board of trustees of Austin county, Tex., had created two separate and distinct school districts out of said alleged common school district No. 25 of Austin county, Tex., as aforesaid, the county board of trustees, defendants in said suit, filed an answer in said suit admitting the justness of plaintiffs' cause of action, and admitting that they had created two separate and distinct school districts out of said common school district No. 25, copy of which said answer is hereto attached, marked Exhibit B, and made a part hereof.'

"The record in the Berndt Case now on file here discloses the truth of these averments, and, further, that the court below, on a trial of it, at the intervention of certain resident taxpayers and patrons of the school therein, sustained demurrers to the petition asking such division, which recited that it had already been effected, and dismissed the suit, and that Berndt and others excepted and perfected their appeal therein to this court, as stated.

"It is thus made to appear in this court that the judgment mandamusing respondents in this cause to so select a site and erect a school building in district 25 was entered while there was pending in the same court a separate suit to have the district divided, in which the trial court, in effect, had determined that a legal division had already taken place, but from which decision the petitioners for a division had perfected their appeal.

"We then reversed the trial court's judgment awarding the writ of mandamus, holding that the writ should have been withheld until the matter of whether or not the district had been divided was finally settled through the appeal in the other case; in so holding, as is apparent from the quoted portion of our opinion, we held that, there being no evidence in the record in this case with reference to the pendency of the other suit, we might look to the record in the other cause pending in this court, that is, No. 8297 here, Emil Berndt et al. v. F. C. Kloss et al., for the finding that the mandamus was issued in the circumstances stated, that is, after the trial court in a separate suit for a division of the district had denied the plaintiffs a right to a judgment in that proceeding, and the plaintiffs had perfected an appeal from such action.

"The first question we propound, therefor, is: Did we err in the holding that the record in the Berndt cause might be so looked to?

"The trial court, over the objections of respondents, admitted in evidence the following paper purporting to be a certified copy of an act of the state board of education:

" 'State of Texas, County of Travis. M. C. Pfeffer et al., Trustees District No. 25, Austin County, Appellants, v. F. W. Kaechele et al., Appellees.

" 'At a meeting of the state board of education in the Governor's office in Austin, Tex., October 12, 1920, the appeal by the trustees of district No. 25, Austin county, Tex., came up for consideration.

" 'The record was reviewed by the board, and upon motion of Mr. Reese, acting comptroller, and seconded by Mr. Spencer, acting secretary of state, it was unanimously decided to sustain the decision of the state superintendent, and it was so ordered.

" 'Done at Austin, Tex., this 12th day of October, A. D. 1920.

" 'Witness my hand and the seal of the state of Texas.. W. P. Hobby, Governor of Texas, and Chairman of the State Board of Education. Attest: Annie Webb Blanton, State Supt. and Secretary State Board of Education.

" 'I, E. L. Dohoney, first assistant state superintendent, do hereby certify that the above is a true and correct copy of the decision rendered by the state board of education in the case of M. C. Pfeffer et al., trustees of district No. 25, Austin county, Tex., Appellants, v. F. W. Kaechele et al., Appellees, on the 12th day of October, A. D. 1920. E. L. Dohoney, First Assistant State Superintendent of Public Instruction.'

"The objections respondents urged in the trial court to the admissibility of this instrument were:

"(1) The power and authority conferred by law upon the state board of education, composed of the Governor, the comptroller, and the secretary of state, is judicial in its nature, calls for the exercise in portion of the discretion vested in these state officers, and cannot in any event be delegated to or exercised for them by their chief clerks.

"(2) The purported copy was not receivable as an act of the state board of education, notwithstanding Revised Statutes, arts. 4343, 4319, in the absence of evidence showing that the persons named as such therein, Mr. Reese and Mr. Spencer, were in fact the chief clerks of the respective state officers they were so assuming to act in place of, and that the contingencies prescribed in said statutes authorizing them to so act, that is, the absence or inability to act of the state officers themselves, had occurred.

"In reversing the judgment, this court held the first of these objections not well taken, in view of the two statutes just referred to, but that the second one was good, and should have been sustained.

"The second question we ask is: Did we err in either of these holdings?"

[1] It is clear that the case of Emil Berndt et al. v. F. C. Kloss et al., No. 5979, is not the same suit as the one out of which the above certificate arose. The parties to

the Berndt suit are not the parties to this suit. The issues involved in the two suits are different, as shown by the certificate.

Courts cannot in one case take judicial notice of their own records in another and different case. The rule is stated in Armendiaz v. De La Serna, 40 Tex. 291, 303, as follows:

"In this connection it is proper to observe, on the suggestion of counsel for plaintiff, that this court should examine the record of the suit here pending on appeal, between the defendant and San Roman, to determine his liability to her, in aid of the jurisdiction of the court below; the court is of opinion that such examination of another record, not in evidence in the record of this cause, would be wholly improper in any point of view. The merits or correctness of decisions made in one case can never be dependent on the contingency of a decision not made final in another, nor put in evidence in the cause at the time of such decision in the first. Moreover, it is believed that such a practice of referring to other records or matters dehors that which is under consideration would be fraught with dangerous consequences, and tend to unjust decisions between litigants. The hearing and decision here should and is required by law to be exclusively upon the record of each cause here appealed, just as it stood in the court from which it is brought."

This holding was approved in State v. Savage, 105 Tex 467, 151 S. W. 530. The same rule has been uniformly announced by our Courts of Civil Appeals. Zarate v. Zarate's Unknown Heirs, 204 S. W. 697; S. W. Surety Ins. Co. v. Gulf, etc., Ry. Co., 196 S. W. 276, 279; General Bonding, etc., Ins. Co. v. Lawson, 194 S. W. 1020; Taylor v Shelton, 63 Tex. Civ. App. 626, 134 S. W. 302. To the same effect is 23 Cyc. 113, citing many cases from various states.

We answer the question appearing first in the certificate in the affirmative.

We will now consider the last question in the certificate.

The certificate does not refer to the fact that Reese and Spencer were respectively the chief clerks of the comptroller and of the secretary of state, except as shown in the second objection to the admissibility of the instrument, but the briefs of both parties so consider them, and it is so agreed. Moreover, the second objection is confined to the point that they were assuming to act as such chief clerks, but that there was no evidence that they were such, and none that the contingencies authorizing them to act had arisen. Therefore we will dispose of the question as if the certificate stated they were assuming to act as chief clerks.

Article 2727 of the Revised Civil Statutes reads:

"The Governor, secretary of state and comptroller shall constitute a state board of education, which shall hold its sessions 'at the seat of government. The Governor shall be ex offi-

cio president of the board, and a majority of the members shall constitute a quorum for the transaction of business."

Article 4318 thereof reads:

"The secretary of state shall appoint a chief clerk and such number of assistant clerks as may be authorized by law, each of whom shall receive such compensation as may from time to time be fixed by appropriation."

Article 4319 thereof reads:

"In the absence of the secretary of state, or his inability to act from any cause, the chief clerk may perform all the duties required by law of that officer."

Article 4343 reads:

"The comptroller shall appoint a chief clerk, who, before entering upon the duties of his office, shall be required to take the oath prescribed by the Constitution, and give bond in the sum of ten thousand dollars, payable in like manner as the bond of the comptroller, conditioned for the faithful performance of his duties, whose duty it shall be to discharge the duties of the comptroller when the comptroller may be unavoidably absent or incapable, from sickness or other cause, to discharge said duties, and, under the direction of the comptroller, to supervise the keeping of the books, records and accounts of the department, and to perform such other duties as may be required of him by law and by the comptroller; and. in the event the office of the comptroller should become vacant by death, resignation or otherwise, said chief clerk shall act as comptroller until a comptroller is appointed and qualified."

[2] It is observed that articles 4318 and 4343, respectively, require that the secretary of state and the comptroller shall each appoint a chief clerk. It is not optional with either to appoint or not appoint such chief clerk. The statute is mandatory in providing for a chief clerk for each. The offices of chief clerk of each is thus created by statute. It is likewise observed that the statutes provide that, in the absence of the secretary of state, or his inability to act from any cause, the chief clerk may perform all the duties required by law of that officer, and that it shall be the duty of the chief clerk of the comptroller to discharge the duties of the comptroller when he may be unavoidably absent or incapable from sickness, or other causes, to discharge said duties.

[3,4] The service of the secretary of state and the comptroller on the board of education is the performance by each of a duty attached by the statute to the office held by each. The duties are not personal. They are duties attached to the offices. Any holder of the office of secretary of state or comptroller must serve as a member of the board of education as a part of the duties of those offices respectively. Since the statutes provide that the chief clerks may respectively perform the duties attaching to those offices, the chief clerks may, in the contingencies

mentioned in the statutes, perform the particular duties attaching to the offices of secretary of state and comptroller by virtue of the statutes making them members of the board of education. In such cases the chief clerks do not perform those duties by delegation of ·authority from their chiefs. They perform them by virtue of authority of the Legislature in the same way that their chiefs are authorized to perform them. The Legislature could have provided that, in the absence, etc., of the secretary of state and comptroller, the chief clerks of either or each should be members of the board of education. The Legislature has done the same thing in a different way by prescribing that the chief clerks provided by statute shall and may, in the absence of the secretary of state and the comptroller, perform the duties of those officers, among which are duties arising from their membership on the state board of education. Thus the chief clerks are officers provided by statute, and authorized by statute, to perform the duties attaching to the officers of secretary of state and comptroller, making those officers members of the board of education. The full authority of the chief clerks thus to act arises from the acts of the Legislature investing them with such authority when the contingencies mentioned in the statutes arise. There is no delegation of authority to the chief clerks by the secretary of state and the comptroller. In truth and in fact, the secretary of state and the comptroller are impotent to prevent the chief clerks from thus performing the duties of those offices in the contingencies of the statutes authorizing them to act. The chief clerks have the same authority to perform the duties of those offices in those contingencies that the secretary of state and comptroller have to perform them at all other times—the authority of the Legislature. The chief clerks are public officers in the same sense and created by the same legal authority as other statutory officers of the state.

[5] The acts of public officers are presumed to have been done in the proper exercise of legitimate powers, unless the contrary be shown. Wooters v. Hall, 61 Tex. 15; Olcott v. Cabert, 86 Tex. 121, 126, 23 S. W. 985; Shepard v. Avery, 89 Tex. 301, 34 S. W. 440; City of San Antonio v.'Berry, 92 Tex. 319, 48 S. W. 496; M. K. & T. R. Co. of Texas v. Shannon, 100 Tex. 379, 396, 100 S. W. 138, 10 L. R. A. (N S.) 681; Lawson's Law of Presumptive Evidence, p. 67; 22 C. J. p. 130, 134.

"It is to be presumed that public officers, including persons acting in an official capacity, have been duly elected or appointed and that they have qualified." 22 Cyc. 142.

Hence the presumption is that Mr Reese and Mr. Spencer were rightly acting as members of the board of education when the action indicated by the certified copy was taken. The burden was on the appellant to prove that Reese and Spencer were not chief clerks, and that the conditions authorizing them to act had not arisen.

[6] In holding the first objection to the admissibility of the instrument not well taken, the Court of Civil Appeals did not err. In holding the second objection to the admissibility of the instrument good, the Court of Civil Appeals did err.

GREENWOOD and PIERSON, JJ. Opinion of Commission of Appeals answering certified questions adopted, and ordered certified to the honorable Court of Civil Appeals.

CURETON, C. J., not sitting.