RAILROAD COMMISSION OF
TEXAS, Appellant,

v.

The ATCHISON, TOPEKA & SANTA FE
RAILROAD COMPANY et al.,
Appellees.

No. 13203.

Court of Civil Appeals of Texas,
Austin.

Dec. 3, 1980.

Rehearing Denied Dec. 31, 1980.

Walter Caven, Jerry Prestridge, Clark, Thomas, Winters & Shapiro, Austin, for appellant.

John S. McEldowney, Mills, Shirley, McMicken & Eckel, Galveston, for appellees.

SHANNON, Justice.

This is an appeal from a permanent injunction entered by the district court of Travis County restraining the Railroad Commission of Texas from enforcing its order in Docket No. 003353ZZCP.

In October, 1978, the superintendent and several patrons of the Academy Public Schools complained to the Commission of poor visibility at a grade crossing of the Atchison, Topeka & Sante Fe Railway Company, located at Knob Creek Road and Heidenheimer in Bell County. The complaint was that high weeds and grass along the railroad right-of-way obscured visibility at the crossing, and that this condition, coupled with the lack of traffic signals, created a hazardous crossing.

In response, the Commission conducted a hearing concerning the safety of the grade crossing. The Commission adopted its examiner's recommendation and entered its order in Docket No. 003353ZZCP requiring the railway company to "... maintain its right-of-way within one-half mile of the above-described crossing in such manner that all weeds and grasses are never higher than one foot from the ground. It is further ordered that [the railway company] designate a responsible individual to file with the director of the Transportation Division, on the first day of the month, an affidavit stating that the right-of-way has been personally inspected and found to comply with the terms of this order."

Appellee Atchison, Topeka & Santa Fe Railway Company and others filed suit in the district court of Travis County seeking a permanent injunction prohibiting the Commission from enforcing its order in Docket No. 003353ZZCP. After hearing, the district court determined that the Commission's jurisdiction is limited only to those matters which the Legislature has specifi-

cally delegated to the Commission, and that its powers under present legislation are not plenary and do not include safety matters in connection with the public's use of railroad crossings. The district court concluded, therefore, that the Commission was without power to issue the order, and, accordingly, entered the permanent injunction. This Court will affirm the order of the district court.

The Commission attacks the court's order by three points of error, claiming that the court erred in concluding that the Commission had no power or authority to enter its order in Docket No. 003353ZZCP.

It is of interest that the Commission's discovery of its power to regulate safety matters in connection with the public's use of railroad crossings originated with this case. When the Commission initially received the complaints concerning the grade crossing in question, the Commission referred the complainants to the Texas State Department of Highways & Public Transportation. In its letter of referral, the Commission stated, "The Railroad Commission has been operating under the belief that we do not have jurisdiction to regulate railroad grade crossings. However, our recent assessment of the situation is that there may be room for the Commission to act in this area. We are doing further research and considering possible courses of action to develop our role in grade crossing safety." After the Highway Commission declined to improve the grade crossing because sufficient funds would not be available in the foreseeable future, the Commission assumed jurisdiction by setting a hearing in November, 1978, to investigate the complaints and by directing its hearing examiner to prepare a report after hearing "recommending appropriate action by the Commission."

In defense of the order of the district court, appellees state, correctly, that an administrative agency, such as the Commission, is a creature of the Legislature and has only such powers as are expressly granted to it by statute, together with those necessarily implied from the authority conferred or duties imposed. *State v. Jackson*, 376 S.W.2d 341 (Tex.1964); *Stauffer v. City of San Antonio*, 162 Tex. 13, 344 S.W.2d 158 (1961); *Railroad Commission of Texas v. Red Arrow Freight Lines, Inc.*, 96 S.W.2d 735 (Tex.Civ.App.1936, writ ref'd); *So. Pac. Transp. Co. R. R. Commission of Tex.*, 592 S.W.2d 74 (Tex.Civ.App.1979, writ ref'd n. r. e.); *Nueces Co. Water C. & I. Dist. v. Texas Water Rights Commission*, 481 S.W.2d 924 (Tex.Civ.App.1972, writ ref'd n. r. e.). Appellees then argue that no statute expressly grants the Commission the powers asserted here, nor are those powers necessarily implied from authority conferred or duties imposed.

In support of its authority to enter its order, the Commission lists a number of statutes: Tex.Rev.Civ.Stat.Ann. arts. 6448, 6460, 6320, 6327, and 6506 (1925).

Article 6448 consists of eleven sections that set out the duties of the Commission. The first nine sections are concerned with the Commission's powers and duties to regulate rates and charges with respect to freight and passengers. Section 10 requires railways to provide and maintain depots. Section 11 provides generally that the Commission is charged with the responsibility of insuring that all laws concerning railroads are enforced and that the Commission shall investigate all complaints against all railway companies. Article 6460 permits any person or entity complaining of a statutory violation by a railway company to "... apply to the Commission under such rules as the Commission may prescribe."

Article 6448 sets out in specific language the duties of the Commission. Regulation of safety measures on a railroad right-of-way is not one of the duties included therein. Had the Legislature intended to vest the Commission with the duty of regulating safety measures on railroad right-of-ways, it could have easily so provided in the clear and direct language used in Sections 1–10 of art. 6448. Contrary to the position of the Commission, Section 11 should be considered together with other provisions of art. 6448, and should not be viewed as vesting the Commission with jurisdiction over

subjects not specified in other sections of the Act.

The Commission claims that art. 6320 is the "law of this State concerning railroads" referred to in art. 6448 that is to be enforced by the Commission. Among other things, art. 6320 invests railway companies with the power to construct tracks across highways. After construction, the railway company is charged by this statute with the responsibility of restoring the highway to its former state and of keeping "such crossings in repair."

It is true that art. 6320 imposes a duty upon the railway companies to keep crossings in repair. Article 6320 means that the railway company must do all that is necessary to place and keep that part of its roadbed and right-of-way over or across which the public highway may run in proper condition for use of the traveling public. *Galveston, H. & S. A. Ry. Co. v. Rodriguez*, 288 S.W. 151 (Tex.Com.App.1926, judgmt. adopted). It is doubtful that the railway company's failure to cut weeds and grass along its right-of-way for one-half mile from the highway crossing was a violation of art. 6320, since the "crossing" referred to in art. 6320 seems to be limited to the "roadbed and right-of-way over or across which the public highway may run." *Galveston, H. & S. A. Ry. Co. v. Rodriguez, supra.* Certainly, the railroad right-of-way extending one-half mile in each direction from the crossing is not roadbed and right-of-way over which the public highway runs. Also, assuming *arguendo* that appellee's failure to cut the grass and weeds was a violation of art. 6320, the remedy for violation of the statute is by suit for common-law negligence, filed by an allegedly damaged party in the proper court, and not by complaint filed with the Commission.

Railway companies are required to keep that part of its roadbed and right-of-way over which any public county road may run in proper condition for use of the traveling public. Tex.Rev.Civ.Stat.Ann. art. 6327. Should the railway company fail to comply, art. 6327 provides a penalty of ten dollars for each week it is in noncompliance.

Article 6327 contains no provision for enforcement by the Commission, but instead specifically vests the county attorney with authority to enforce the statute by suit filed in the proper court.

Both arts. 6320 and 6327 were in existence when the Legislature created the Commission in 1891. Had the Legislature intended to empower the Commission to regulate crossings provided for in art. 6320 or to initiate lawsuits to recover penalties for violations of art. 6327, it would have so provided in art. 6448. The words and phrases effective to make such a transfer of power are well understood and have been used frequently. If the Legislature had intended to grant such powers to the Commission, it cannot be doubted that it would have used clear and direct language, not open to misconstruction.

Finally, art. 6506 admonishes the Commission to "... see that each railroad corporation owning or operating a line of railroad in this State shall maintain its roadbed and track in such condition as to enable it to perform all of its duties as a common carrier with reasonable safety to persons and property carried by it and its employees with reasonable dispatch." The plain language of art. 6506 demonstrates that the concern of the Legislature in that article was to protect passengers and freight by requiring that each railway company maintain its roadbed and track. In the case at bar, the critical facts involve neither passengers, freight, roadbed, nor tracks. Therefore, this statute does not authorize the Commission to regulate safety features of railway right-of-ways.

The analysis of the above statutes makes clear that the Legislature has not expressly granted to the Commission the power to order appellee to maintain its right-of-way within one-half mile of the crossing so that the weeds and grass do not exceed one foot in height. Neither can such power in the Commission be necessarily implied from the authority conferred or duties imposed by such statutes. *Stauffer v. City of San Antonio, supra; So. Pac.*

*Transp. Co. v. R. R. Commission of Tex., supra.*

The fact that the Commission has decided that it now possesses this power and has acted upon that decision may not be supported by an appeal to the rule of contemporaneous construction. It would be strange indeed if an agency could by mere process of construction create for itself a power which the Legislature has not given to it. *Interstate Commerce Commission v. Cincinnati, N. O. & T. P. R. Co.,* 167 U.S. 479, 17 S.Ct. 896, 42 L.Ed. 243 (1896).

■ It may be that there should be legislation empowering the Commission to regulate the maintenance of railroad right-of-ways some distance from crossings. All would agree, however, that the creation of such authority is properly the function of the Legislature and not that of the courts. Deficiencies in the laws regulating an industry "... will not justify a court's excursion beyond its proper sphere in order to plug a hole or cure a supposed defect in the legislative scheme of things." *State v. Reyna,* 333 S.W.2d 832 (Tex.1960); *So. Pac. Transp. Co. v. R. R. Commission of Tex., supra.*

The judgment is affirmed.

Affirmed.