Honorable Bob Bullock Comptroller of Public Accounts L.B.J. State Office Building Austin, Texas 78774
Re: Authority of Racing Commission members to delegate duties, and authority of Racing Commission to contract with Texas Veterinary Medical Diagnostic Laboratory (RQ-1390)
Dear Mr. Bullock:
You ask several questions about the Texas Racing Commission,[1]
which regulates greyhound racing and horse racing in Texas. V.T.C.S. art. 179e. You first ask a series of questions about the authority of commission members to delegate their duties.
The Racing Act, V.T.C.S. art. 179e, § 2.02, provides that the commission shall consist of eight members: six appointed by the governor with the advice and consent of the Senate and two ex officio members, the chairman of the Public Safety Commission and the Comptroller of Public Accounts. You ask the following questions about the commission members' authority to delegate their duty to sit on the commission:
 (a) May the Chief Clerk of the Comptroller of Public Accounts sit in the Comptroller's absence as a voting member of the Commission?
 (b) If he does so, should he be counted in determining whether a quorum is present at Commission meetings?
 (c) May other Commission members send substitutes to act for them in Commission meetings that they are unable to attend?
 (d) If (c) is answered "yes," should the substitutes for the other members be counted in determining whether there is a quorum present at Commission meetings?
 (e) May the Commission allow substitutes for the other members to vote in place of the absent members?
 (f) May the Commission allow substitutes for the other members to sit for the absent members and speak but not vote?
Your first question is whether the comptroller's chief clerk may sit as a voting member of the commission. Section 403.003 of the Government Code provides:
(a) The comptroller shall appoint a chief clerk who shall:
 (1) perform the duties of the comptroller when the comptroller is unavoidably absent or is incapable of discharging those duties;
 (2) act as comptroller if the office of comptroller becomes vacant until a comptroller is appointed and qualified; and
 (3) under the comptroller's direction, supervise the keeping of the books, records, and accounts of the office and perform other duties required by law or the comptroller.
 (b) The chief clerk shall take the official oath and give bond in the amount of $10,000, payable in the same manner as the comptroller's bond, and conditioned on the faithful performance of the duties of the office.
Thus, when the comptroller is unavoidably absent or is incapable of performing the duties of his office, his chief clerk is authorized to perform those duties. Your question, then, is whether the comptroller's responsibility to sit as a member of the Racing Commission constitutes a "duty of office."
In Pfeffer v. Mahnke, 260 S.W. 1031 (Tex.Comm'n App. 1924, opinion adopted), the court considered whether the comptroller's chief clerk was authorized to perform the duties attaching to the office of comptroller as a member of the state board of education. The court wrote:
 It is observed that articles 4318 and 4343, respectively, require that the secretary of state and the comptroller shall each appoint a chief clerk. It is not optional with either to appoint or not appoint such chief clerk. The statute is mandatory in providing for a chief clerk for each. The offices of chief clerk for each is thus created by statute. It is likewise observed that the statutes provide that, in the absence of the secretary of state, or his inability to act from any cause, the chief clerk may perform all the duties required by law of that officer and that it shall be the duty of the chief clerk of the comptroller to discharge the duties of the comptroller when he may be unavoidably absent or incapable from sickness, or other causes, to discharge said duties.
 The service of the secretary of state and the comptroller on the board of education is the performance by each of a duty attached by the statute to the office held by each. The duties are not personal. They are duties attached to the offices. Any holder of the office of secretary of state or comptroller must serve as a member of the board of education as a part of the duties of those offices respectively. Since the statutes provide that the chief clerks may respectively perform the duties attaching to those offices, the chief clerks may, in the contingencies mentioned in the statutes, perform the particular duties attaching to the offices of secretary of state and comptroller by virtue of the statutes making them members of the board of education. In such cases the chief clerks do not perform those duties by delegation of authority from their chiefs. They perform them by virtue of authority of the Legislature in the same way that their chiefs are authorized to perform them. The Legislature could have provided that, in the absence, etc., of the secretary of state and comptroller, the chief clerks of either or each should be members of the board of education. The Legislature has done the same thing in a different way by prescribing that the chief clerks provided by statute shall and may, in the absence of the secretary of state and the comptroller, perform the duties of those officers, among which are duties arising from their membership on the state board of education. (Emphasis added.)
260 S.W. at 1033-34. Because the comptroller's responsibility to sit as a member of the Racing Commission is attached to his office rather than to him personally, it follows from the court's decision in Pfeffer v. Mahnke, supra, that the comptroller's chief clerk is authorized to perform the comptroller's duty to sit as an ex officio member of the Racing Commission when the comptroller is unavoidably absent or is otherwise unable to act. It also follows that when the chief clerk takes the place of the comptroller as a member of the Racing Commission, he may vote and should be counted in determining whether a quorum is present.
You also ask whether other members of the commission may send substitutes to act for them. It is well established that, in the absence of express statutory authority, a public official may not delegate non-ministerial duties. Moody v. Texas Water Commission,373 S.W.2d 793, 797 (Tex.Civ.App.-Austin 1963, writ ref'd n.r.e.); Attorney General Opinion WW-66 (1957). A commission member's duty to participate in deliberations and decisions about the regulation of greyhound and horse racing in Texas is non-ministerial and may not be delegated. See Attorney General Opinion H-884 (1976). Therefore, none of the commissioners, including the comptroller, may delegate their authority to act as members of the commission. The comptroller's chief clerk is authorized to sit as a member of the commission in the comptroller's absence by virtue of statutory authority, not by virtue of a delegation. Pfeffer v. Mahnke, 260 S.W. at 1034.
You also ask whether the commission may allow substitutes for other members to sit for the absent members and speak but not vote. In the absence of express statutory authority, a commission member may not delegate his responsibility to deliberate meetings. The commission may not authorize such delegation by rule. See generally H-188 (1973); see also Webster v. Texas 
Pacific Motor Transport Co., 166 S.W.2d 75 (Tex. 1942).
Three questions remain:
 Whether the Commission would be authorized to loan or otherwise transfer money to Texas A M to get ready for drug testing of racing animals.
 If not, may an interagency contract properly be entered into between the Commission and A M to help A M establish a lab to test racing animals for drugs?
 Whether the Commission is required to use Texas A M for drug testing of animals if cheaper and equally effective drug testing of animals is available through other sources.
Section 14.03 of the Racing Act provides, in part:
 (a) The commission shall adopt rules prohibiting the illegal influencing of the outcome of a race, including but not limited to the use of medication, stimulants, or depressants to attempt to or to influence illegally the outcome of a race.
 (b) The commission may require prerace testing by urinalysis, saliva testing, or blood testing, by any combination of the three, or by any other testing method recognized by the racing industry to determine whether such a drug, chemical, or other substance has been administered and shall require postrace testing by such a method. The commission shall adopt rules that require all such tests to be conducted using state-of-the-art methods. On any positive test showing the presence of prohibited drugs, chemicals, or other substances, the animal shall be immediately disqualified and all persons who have administered or applied the drug, chemical, or other substance or any electric device or spur may be immediately suspended pending hearing by the stewards or judges with the right of appeal to the commission. Such a suspension may be stayed, in the discretion of the commission only, during the pendency of such appeal. The commission shall require that all urine samples be frozen and maintained for a period of one year in order to enable veterinarians and chemists to conduct follow-up tests to detect and identify prohibited drugs. All other specimens shall be maintained for testing purposes in the manner prescribed by the commission. Such a test may also be required by the owner or trainer of an animal or by the association at whose racetrack the animal is entered in a race meeting.
V.T.C.S. art. 179e, § 14.03(a), (b). Subsections (d) and (e) of section 3.07 of the act provide:
 (d) Medication or drug testing performed under Section 14.03 of this Act shall be conducted either by the Texas Veterinary Medical Diagnostic Laboratory or in conjunction with or by a private or public agency that is approved by the commission and by the Texas Veterinary Medical Diagnostic Laboratory and that is accredited by the American Association of Veterinary Laboratory Diagnosticians. Charges for services performed under this section by the Texas Veterinary Medical Diagnostic Laboratory or by an approved and accredited private or public agency shall be forwarded to the commission for approval as to reasonableness of the charges for the services. Charges may include but are not limited to expenses incurred for travel, lodging, testing, and processing of test results. The reasonable charges associated with medication or drug testing conducted under this Act shall be paid by the association that receives the services. On the approval of the charges as reasonable, the commission shall forward a copy of the charges to the association that receives the services for immediate payment. All persons performing testing services under this section and Section 14.03 of this Act must be licensed under Article 7 of this Act. A person conducting tests under this section is a state veterinarian for purposes of Subsection (a) of this section.
 (e) To pay the charges associated with the medication or drug testing, an association may use the money retained by the association on tickets that are purchased as wagers on winning horses or greyhounds and that are not cashed by the holders of the tickets. If additional amounts are needed to pay the charges, the association shall pay those additional amounts. If the amount retained exceeds the amount needed to pay the charges, the association shall pay the excess to the comptroller for deposit in the manner provided by Section 3.09 of this Act. (Emphasis added.)
V.T.C.S. art. 179e, § 3.07(d), (e).
You ask whether the commission is authorized to loan or transfer money to the Texas Veterinary Medical Diagnostic Laboratory[2]
"to get ready for drug testing of racing animals." A state agency has only those powers expressly granted to it by the legislature or necessarily implied. Railroad Commission v. Atchison, Topeka 
Santa Fe Railway Co., 609 S.W.2d 641, 643 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.). The Racing Commission has authority to order drug testing and to approve the laboratories that perform such drug testing. The commission does not, however, have authority under the applicable statutes to set up a laboratory itself or to contract with the Texas Veterinary Medical Diagnostic Laboratory or any other entity for the purpose of setting up a laboratory. Also, a rider to the current appropriations act provides:
 APPROPRIATION TRANSFERS. a. None of the money appropriated by this Act may be transferred from one agency or department to another agency or department, or from one appropriations item or program to another appropriation item or program, unless such transfer is specifically authorized by this Act.
General Appropriations Act, Acts 1987, 70th Leg., 2d C.S., ch. 78, art. V, § 61, at 1123. See also Id. art. III, at 954 (appropriation to the Texas Veterinary Medical Diagnostic Laboratory of money to be used "for establishing a drug testing program for race horses and dogs"). Therefore, the commission may not loan or otherwise transfer money to the Texas Veterinary Medical Diagnostic Laboratory to set up a laboratory for drug testing.
You also ask whether the Racing Commission and the Texas Veterinary Medical Diagnostic Laboratory may enter into an interagency contract to help the Texas Veterinary Medical Diagnostic Laboratory establish a laboratory. The Interagency Cooperation Act, article 4413(32), V.T.C.S., does not enlarge the authority of state agencies. V.T.C.S. art. 4413(32), § 5. Because the Racing Commission has no authority to establish a laboratory for drug testing, it may not contract with Texas Veterinary Medical Diagnostic Laboratory to establish a laboratory for drug testing.
Your last question is whether drug testing must be performed by the Texas Veterinary Medical Diagnostic Laboratory if "cheaper and equally effective drug testing of animals is available."[3]
The Racing Act expressly provides that drug testing shall be conducted either by the Texas Veterinary Medical Diagnostic Laboratory "or in conjunction with or by a private or public agency that is approved by the commission and by the Texas Veterinary Medical Diagnostic Laboratory and that is accredited by the American Association of Laboratory Diagnosticians." V.T.C.S. art. 179e, § 3.07(d). Therefore, the Racing Commission may approve any accredited laboratory to perform drug testing as long as the Texas Veterinary Medical Diagnostic Laboratory also approves. The Texas Veterinary Medical Diagnostic Laboratory may not unreasonably withhold its approval. See Allstate Insurance Co. v. State Board of Insurance, 401 S.W.2d 131, 132
(Tex.Civ.App.-Austin 1966, writ ref'd n.r.e.).
 SUMMARY
The comptroller's chief clerk may perform the comptroller's duties as ex officio member of the Racing Commission if the comptroller is unavoidably absent or otherwise unable to discharge those duties. In such a situation the chief clerk may vote and should be counted in determining whether a quorum is present. Members of the Racing Commission may not delegate their duties as members of the commission. The chief clerk is authorized to act in the comptroller's absence by virtue of statutory authority, not by virtue of delegation.
The Racing Commission has no authority to spend money to develop a laboratory to perform drug testing, and the commission has no authority to contract with the Texas Veterinary Medical Diagnostic Laboratory to develop a laboratory to perform drug testing. The commission may approve an accredited laboratory other than the Texas Veterinary Medical Diagnostic Laboratory to perform drug testing, but the Texas Veterinary Medical Diagnostic Laboratory must also approve the laboratory.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Sarah Woelk Assistant Attorney General
[1] Two of your questions are governed by the Open Meetings Act, article 6252-17, V.T.C.S., and one is governed by the Texas Open Records Act, article 6252-17a, V.T.C.S. Those questions will be answered by separate letter.
[2] You phrase your questions in terms of the commission's authority to contract with Texas A M University. We assume that you intend that reference to mean the Texas Veterinary Medical Diagnostic Laboratory, which is referred to in section 3.07(d). The Texas Veterinary Medical Diagnostic Laboratory was created by article 7465b, which provides:
 Sec. 1. There is hereby created an agency of the State of Texas to be known as the Texas Veterinary Medical Diagnostic Laboratory. It shall not be a part of the Texas A M University System but it shall be under the jurisdiction and supervision of the Board of Regents of the Texas A M University System. The said Board of Regents shall staff the agency with an executive director and such other employees necessary for the proper functioning thereof, and such executive director and employees shall be eligible to participate in the same retirement systems and personnel benefits available to employees of The Texas A M University System.
V.T.C.S. art. 7465b, § 1.
[3] The act does not anticipate that there will be only one approved laboratory. Nothing in section 3.07(d) would prevent the commission from approving more than one laboratory. Also, the commission must approve the reasonableness of the charges made by any approved laboratory.