

# THE ATTORNEY GENERAL
# OF TEXAS

May 13, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Bob Bullock
Comptroller of Public
   Accounts
L.B.J. State Office
   Building
Austin, Texas 78774

Opinion No. JM-903

Re: Authority of Racing Commission members to delegate duties, and authority of Racing Commission to contract with Texas Veterinary Medical Diagnostic Laboratory (RQ-1390)

Dear Mr. Bullock:

You ask several questions about the Texas Racing Commission,[1] which regulates greyhound racing and horse racing in Texas. V.T.C.S. art. 179e. You first ask a series of questions about the authority of commission members to delegate their duties.

The Racing Act, V.T.C.S. art. 179e, §2.02, provides that the commission shall consist of eight members: six appointed by the governor with the advice and consent of the Senate and two ex officio members, the chairman of the Public Safety Commission and the Comptroller of Public Accounts. You ask the following questions about the commission members' authority to delegate their duty to sit on the commission:

> (a) May the Chief Clerk of the Comptroller of Public Accounts sit in the Comptroller's absence as a voting member of the Commission?

---

1. Two of your questions are governed by the Open Meetings Act, article 6252-17, V.T.C.S., and one is governed by the Texas Open Records Act, article 6252-17a, V.T.C.S. Those questions will be answered by separate letter.

   (b) If he  does so, should  he be counted  in determining whether  a quorum  is present  at Commission meetings?

   (c) May   other Commission   members   send substitutes to  act  for them  in Commission meetings that they are unable to attend?

   (d) If  (c)  is answered "yes," should  the substitutes for the other members be  counted in determining  whether  there  is  a  quorum present at Commission meetings?

   (e) May the Commission allow substitutes  for the other  members to  vote in  place of  the absent members?

   (f) May the Commission allow substitutes  for the other  members  to  sit  for  the  absent members and speak but not vote?

   Your first question is whether the comptroller's  chief clerk may sit as a voting member of the commission.  Section 403.003 of the Government Code provides:

   (a) The comptroller shall appoint a  chief clerk who shall:

      (1) perform the duties of the comptrol- ler when  the comptroller  is  unavoidably absent  or  is  incapable  of  discharging those duties;

      (2) act as comptroller if the office of comptroller  becomes  vacant  until  a comptroller is  appointed  and  qualified; and

      (3) under the comptroller's  direction, supervise  the  keeping  of  the  books, records, and  accounts of  the office  and perform other  duties required  by law  or the comptroller.

   (b) The  chief  clerk  shall  take  the official oath and give bond in the amount  of $10,000, payable in  the same  manner as  the comptroller's bond,  and conditioned  on  the faithful performance  of  the duties  of  the office.

Thus, when the comptroller is unavoidably absent or is incapable of performing the duties of his office, his chief clerk is authorized to perform those duties. Your question, then, is whether the comptroller's responsibility to sit as a member of the Racing Commission constitutes a "duty of office."

In <u>Pfeffer v. Mahnke</u>, 260 S.W. 1031 (Tex. Comm'n App. 1924, opinion adopted), the court considered whether the comptroller's chief clerk was authorized to perform the duties attaching to the office of comptroller as a member of the state board of education. The court wrote:

> It is observed that articles 4318 and 4343, respectively, require that the secretary of state and the comptroller shall each appoint a chief clerk. It is not optional with either to appoint or not appoint such chief clerk. The statute is mandatory in providing for a chief clerk for each. The offices of chief clerk for each is thus created by statute. It is likewise observed that the statutes provide that, in the absence of the secretary of state, or his inability to act from any cause, the chief clerk may perform all the duties required by law of that officer and that it shall be the duty of the chief clerk of the comptroller to discharge the duties of the comptroller when he may be unavoidably absent or incapable from sickness, or other causes, to discharge said duties.
>
> The service of the secretary of state and the comptroller on the board of education is the performance by each of a duty attached by the statute to the office held by each. The duties are not personal. They are duties attached to the offices. <u>Any holder of the office of secretary of state or comptroller must serve as a member of the board of education as a part of the duties of those offices respectively.</u> Since the statutes provide that the chief clerks may respectively perform the duties attaching to those offices, the chief clerks may, in the contingencies mentioned in the statutes, perform the particular duties attaching to the offices of secretary of state and comptroller by virtue of the statutes making

them members of the  board of education.  <u>In
such cases the  chief clerks  do not  perform
those duties by delegation of authority  from
their chiefs.  They perform them by virtue of
authority of the Legislature in the same  way
that their chiefs  are authorized to  perform
them</u>.  The  Legislature could have  provided
that, in the absence, etc., of the  secretary
of state and comptroller, the chief clerks of
either or each should be members of the board
of education.  The  Legislature has done  the
same thing in a different way by  prescribing
that the  chief  clerks provided  by  statute
shall  and  may,  in  the  absence  of   the
secretary  of  state  and  the  comptroller,
perform the duties  of those officers,  among
which are duties  arising from their  member-
ship  on  the  state  board  of  education.
(Emphasis added.)

260 S.W.  at 1033-34.  Because the  comptroller's  respons-
ibility to  sit as  a  member of  the Racing  Commission  is
attached to his  office rather  than to  him personally,  it
follows from  the court's  decision  in <u>Pfeffer  v.  Mahnke</u>,
<u>supra</u>, that the comptroller's  chief clerk is authorized  to
perform the  comptroller's  duty to  sit  as an  ex  officio
member of  the  Racing  Commission when  the comptroller  is
unavoidably absent or is otherwise  unable to act.  It  also
follows that when  the chief  clerk takes the  place of  the
comptroller as a  member of  the Racing  Commission, he  may
vote and should be counted  in determining whether a  quorum
is present.

You also ask  whether other members  of the  commission
may send substitutes  to act  for them.  It  is well  estab-
lished that, in the absence of express statutory  authority,
a public official may  not delegate non-ministerial  duties.
<u>Moody v. Texas Water Commission</u>,  373 S.W.2d 793,  797 (Tex.
Civ. App.  -  Austin 1963,  writ  ref'd  n.r.e.);  Attorney
General Opinion WW-66 (1957).  A commission member's  duty to
participate  in  deliberations  and  decisions about  the
regulation  of  greyhound and  horse  racing  in  Texas  is
non-ministerial and  may  not be  delegated.  <u>See</u>  Attorney
General  Opinion  H-884  (1976).  Therefore,  none  of  the
commissioners, including the comptroller, may <u>delegate</u> their
authority  to  act  as  members  of  the  commission.  The
comptroller's chief clerk is authorized  to sit as a  member
of the commission in the comptroller's absence by virtue  of
statutory authority, not by virtue of a delegation.  <u>Pfeffer</u>
<u>v. Mahnke</u>, 260 S.W. at 1034.

You also ask whether the commission may allow substitutes for other members to sit for the absent members and speak but not vote. In the absence of express statutory authority, a commission member may not delegate his responsibility to deliberate at meetings. The commission may not authorize such delegation by rule. See generally H-188 (1973); see also Webster v. Texas & Pacific Motor Transport Co., 166 S.W.2d 75 (Tex. 1942).

Three questions remain:

Whether the Commission would be authorized to loan or otherwise transfer money to Texas A&M to get ready for drug testing of racing animals.

If not, may an interagency contract properly be entered into between the Commission and A&M to help A&M establish a lab to test racing animals for drugs?

Whether the Commission is required to use Texas A&M for drug testing of animals if cheaper and equally effective drug testing of animals is available through other sources.

Section 14.03 of the Racing Act provides, in part:

(a) The commission shall adopt rules prohibiting the illegal influencing of the outcome of a race, including but not limited to the use of medication, stimulants, or depressants to attempt to or to influence illegally the outcome of a race.

(b) The commission may require prerace testing by urinalysis, saliva testing, or blood testing, by any combination of the three, or by any other testing method recognized by the racing industry to determine whether such a drug, chemical, or other substance has been administered and shall require postrace testing by such a method. The commission shall adopt rules that require all such tests to be conducted using state-of-the-art methods. On any positive test showing the presence of prohibited drugs, chemicals, or other substances, the animal shall be immediately disqualified and all persons who have

administered or applied the drug, chemical, or other substance or any electric device or spur may be immediately suspended pending hearing by the stewards or judges with the right of appeal to the commission. Such a suspension may be stayed, in the discretion of the commission only, during the pendency of such appeal. The commission shall require that all urine samples be frozen and maintained for a period of one year in order to enable veterinarians and chemists to conduct follow-up tests to detect and identify prohibited drugs. All other specimens shall be maintained for testing purposes in the manner prescribed by the commission. Such a test may also be required by the owner or trainer of an animal or by the association at whose racetrack the animal is entered in a race meeting.

V.T.C.S. art. 179e, §14.03(a), (b). Subsections (d) and (e) of section 3.07 of the act provide:

(d) Medication or drug testing performed under Section 14.03 of this Act shall be conducted either by the Texas Veterinary Medical Diagnostic Laboratory or in conjunction with or by a private or public agency that is approved by the commission and by the Texas Veterinary Medical Diagnostic Laboratory and that is accredited by the American Association of Veterinary Laboratory Diagnosticians. Charges for services performed under this section by the Texas Veterinary Medical Diagnostic Laboratory or by an approved and accredited private or public agency shall be forwarded to the commission for approval as to reasonableness of the charges for the services. Charges may include but are not limited to expenses incurred for travel, lodging, testing, and processing of test results. The reasonable charges associated with medication or drug testing conducted under this Act shall be paid by the association that receives the services. On the approval of the charges as reasonable, the commission shall forward a copy of the charges to the association that receives the services for immediate payment. All persons performing testing services under

this section and  Section 14.03  of this  Act
must be licensed under Article 7 of this Act.
A person conducting tests under this  section
is  a  state  veterinarian  for  purposes  of
Subsection (a) of this section.

(e)  To  pay the  charges associated  with
the medication or  drug testing, an  associa-
tion  may  use  the  money  retained  by  the
association on tickets that are purchased  as
wagers on  winning horses  or greyhounds  and
that are  not cashed  by the  holders of  the
tickets.  If additional amounts are needed to
pay the  charges, the  association shall  pay
those  additional  amounts.  If  the  amount
retained exceeds the amount needed to pay the
charges, the association shall pay the excess
to the comptroller for deposit in the  manner
provided  by  Section  3.09  of  this  Act.
(Emphasis added.)

V.T.C.S. art. 179e, §3.07(d), (e).

You ask whether the commission is authorized to loan or
transfer money to  the Texas  Veterinary Medical  Diagnostic
Laboratory[2] "to  get  ready  for  drug  testing  of  racing

---

2.  You  phrase  your  questions  in  terms  of  the
commission's authority  to  contract  with  Texas  A & M
University.  We assume that  you intend that reference  to
mean the Texas  Veterinary Medical Diagnostic  Laboratory,
which is  referred  to  in  section  3.07(d).  The  Texas
Veterinary Medical  Diagnostic Laboratory  was created  by
article 7465b, which provides:

Sec. 1.  There is hereby created an agency of
the State of Texas to  be known as the  Texas
Veterinary Medical Diagnostic Laboratory.  It
shall not  be  a part  of  The Texas  A  &  M
University System but it  shall be under  the
jurisdiction and supervision of the Board  of
Regents of The Texas A & M University System.
The said  Board of  Regents shall  staff  the
agency with  an executive  director and  such
other  employees  necessary  for  the  proper
functioning  thereof,  and  such  executive
(Footnote Continued)

animals." A state agency has only those powers expressly granted to it by the legislature or necessarily implied. Railroad Commission v. Atchison, Topeka & Santa Fe Railway Co., 609 S.W.2d 641, 643 (Tex. Civ. App. - Austin 1980, writ ref'd n.r.e.). The Racing Commission has authority to order drug testing and to approve the laboratories that perform such drug testing. The commission does not, however, have authority under the applicable statutes to set up a laboratory itself or to contract with the Texas Veterinary Medical Diagnostic Laboratory or any other entity for the purpose of setting up a laboratory. Also, a rider to the current appropriations act provides:

> APPROPRIATION TRANSFERS. a. None of the money appropriated by this Act may be transferred from one agency or department to another agency or department, or from one appropriations item or program to another appropriation item or program, unless such transfer is specifically authorized by this Act.

General Appropriations Act, Acts 1987, 70th Leg., 2d C.S., ch. 78, art. V, §61, at 1123. See also Id. art. III, at 954 (appropriation to the Texas Veterinary Medical Diagnostic Laboratory of money to be used "for establishing a drug testing program for race horses and dogs"). Therefore, the commission may not loan or otherwise transfer money to the Texas Veterinary Medical Diagnostic Laboratory to set up a laboratory for drug testing.

You also ask whether the Racing Commission and the Texas Veterinary Medical Diagnostic Laboratory may enter into an interagency contract to help the Texas Veterinary Medical Diagnostic Laboratory establish a laboratory. The Interagency Cooperation Act, article 4413(32), V.T.C.S., does not enlarge the authority of state agencies. V.T.C.S. art. 4413(32), §5. Because the Racing Commission has no authority to establish a laboratory for drug testing, it may

---

(Footnote Continued)
> director and employees shall be eligible to participate in the same retirement systems and personnel benefits available to employees of The Texas A & M University System.

V.T.C.S. art. 7465b, §1.

not contract with Texas Veterinary Medical Diagnostic Laboratory to establish a laboratory for drug testing.

Your last question is whether drug testing must be performed by the Texas Veterinary Medical Diagnostic Laboratory if "cheaper and equally effective drug testing of animals is available."[3] The Racing Act expressly provides that drug testing shall be conducted either by the Texas Veterinary Medical Diagnostic Laboratory "or in conjunction with or by a private or public agency that is approved by the commission and by the Texas Veterinary Medical Diagnostic Laboratory and that is accredited by the American Association of Laboratory Diagnosticians." V.T.C.S. art. 179e, §3.07(d). Therefore, the Racing Commission may approve any accredited laboratory to perform drug testing as long as the Texas Veterinary Medical Diagnostic Laboratory also approves. The Texas Veterinary Medical Diagnostic Laboratory may not unreasonably withhold its approval. See Allstate Insurance Co. v. State Board of Insurance, 401 S.W.2d 131, 132 (Tex. Civ. App. - Austin 1966, writ ref'd n.r.e.).

## S U M M A R Y

The comptroller's chief clerk may perform the comptroller's duties as ex officio member of the Racing Commission if the comptroller is unavoidably absent or otherwise unable to discharge those duties. In such a situation the chief clerk may vote and should be counted in determining whether a quorum is present. Members of the Racing Commission may not delegate their duties as members of the commission. The chief clerk is authorized to act in the comptroller's absence by virtue of statutory authority, not by virtue of delegation.

---

3. The act does not anticipate that there will be only one approved laboratory. Nothing in section 3.07(d) would prevent the commission from approving more than one laboratory. Also, the commission must approve the reasonableness of the charges made by any approved laboratory.

The Racing Commission has no authority to spend money to develop a laboratory to perform drug testing, and the commission has no authority to contract with the Texas Veterinary Medical Diagnostic Laboratory to develop a laboratory to perform drug testing. The commission may approve an accredited laboratory other than the Texas Veterinary Medical Diagnostic Laboratory to perform drug testing, but the Texas Veterinary Medical Diagnostic Laboratory must also approve the laboratory.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General